UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
: USDC SDNY
: DOCUMENT
: ELECTRONICALLY FILED
CHINYERE ADAMS, : DOC #: _____
: DATE FILED: October 3, 2017
Plaintiff, :
:
-v- : 15-cv-5082 (KBF)
:
MONTEFIORE MEDICAL CENTER, and : OPINION & ORDER
TITA AGUILAR-NIERE, NURSE MANAGER :
:
Defendants. :
:
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

On June 29, 2015, Chinyere Adams ("plaintiff" or "Adams") commenced this employment discrimination action against her former employer, Montefiore Medical Center ("Montefiore"), and her former supervisor, Tita Aguilar-Niere ("Aguilar") (collectively, "defendants"). (ECF No. 1.) Adams alleges, in sum, that defendants discriminated and retaliated against her based on her race and/or national origin in violation of 42 U.S.C. § 1981, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq., and the New York State Human Rights Executive Law ("NYSHRL").

Following a period of discovery, defendants moved for summary judgment on November 21, 2016. (ECF No. 37.) Adams opposed that motion on February 14, 2017 (ECF No. 61), and defendants replied on March 24, 2017 (ECF No. 66).

For the reasons discussed below, the Court hereby GRANTS defendants' motion in its entirety.

I.  BACKGROUND

The following facts are taken from the parties' submissions under Local Civ. R. 56.1, and are undisputed unless otherwise noted.[1]

At all times relevant to this action, defendant Aguilar worked for defendant Montefiore as an Administrative Nurse Manager ("ANM"). (Pl.'s Resp. to Defs.' Rule 56.1 Statement ("Pl.'s 56.1 Resp.") ¶ 3, ECF No. 57.) In that role, Aguilar was responsible for, inter alia, ensuring patient care and satisfaction and supervising the nursing staff, including Adams. (Id. ¶ 14.) In 2005, Aguilar interviewed Adams for a position at Montefiore, and ultimately recommended that she be hired. (Id. ¶ 9.)

On June 6, 2005, Adams began work as a Nursing Attendant ("NA") at Montefiore's Moses Hospital in the Bronx, New York. (Id. ¶ 8.) As an NA, Adams was responsible for, inter alia, taking patients' vital signs, answering calls, and doing rounds. (Id. ¶ 26.) Adams worked on a per diem basis until August or September 2005, at which point Aguilar moved her to a part-time position. (Id. ¶¶ 22-23.) Aguilar subsequently moved plaintiff to a full time position in February

---

[1] Pursuant to Local Civ. R. 56.1(c), "[e]ach numbered paragraph in the statement of material facts . . . will be deemed to be admitted . . . unless specifically controverted . . . in the statement required to be served by the opposing party." There are numerous instances where plaintiff neither admits nor denies a fact, but rather (1) adds additional facts, (2) quibbles with defendants' characterization of the fact; or (3) makes legal arguments. There are also numerous instances where, although plaintiff "denies" a fact in form, she does not actually controvert the fact in substance (e.g., where she denies responsibility for a workplace incident that resulted in discipline, but does deny that the discipline was issued). In all such instances, defendants' asserted facts are deemed admitted to the extent they are properly supported.

2

2008.  (Id. ¶ 24.)  As a result of each move, plaintiff "worked more hours and earned more money."  (Id. ¶¶ 23-24.)

From 2011-2012, Adams was involved in at least four incidents related to her workplace conduct, three of which resulted in discipline:

- On May 10, 2011, a Patient Care Coordinator ("PCC") named Sherri Bradshaw reported that Adams "responded rudely . . . [when asked] to send a stool specimen, and then walked away."  (Defs.' Statement of Undisputed Material Facts Pursuant to Fed. R. Civ. P. 56 ("Defs.' 56.1 Statement") ¶ 62, ECF No. 39.)  Adams was subsequently issued a written "verbal warning" that indicated future incidents "could lead to suspension or possible termination" on June 16, 2011 (the "June 16 Warning").  (Id. ¶ 64; Pl.'s 56.1 Resp. ¶ 64.)

- On November 1, 2011, Aguilar received an e-mail from Christina Jones, the Assistant Director of Nursing, relaying a complaint from PCC Bradshaw that Adams had yelled at her in a threatening manner.  (Defs.' 56.1 Statement ¶ 67.)  Adams was subsequently issued a written "verbal warning" in the presence of a union delegate on February 1, 2012 (the "February 1 Warning").  (Id. ¶ 69; Pl.'s 56.1 Resp. ¶ 69.)

- On March 10, 2012, PCC Bradshaw reported to Aguilar that Adams had yelled at her.  (Defs.' 56.1 Statement ¶ 74a.)  On March 29, 2012, an RN named Amy Lizaso-Belir reported to Aguilar that Adams had an outburst at the nurses' station.  (Id. ¶ 74b.)  As a result of these two incidents,

3

Adams was suspended from work on March 30, 2012 (the "March 30 Suspension"). (Id. ¶ 73; Pl.'s 56.1 Resp. ¶ 73.)

- On July 6, 2012, an RN named Gary Bendykowski reported that he had been involved in a dispute with Adams regarding Adams's job responsibilities (the "July 6 Report"). (Defs.' 56.1 Statement ¶¶ 76-78; Pl.'s 56.1 Resp. ¶¶ 76-78.)

On August 30, 2012, Aguilar met with Janice Reyes, the Labor & Employee Relations Manager in Montefiore's Human Resources Department, to discuss Adams. (Defs.' 56.1 Statement ¶¶ 83, 85-86.) At that meeting, Aguilar and Reyes decided to terminate Adams's employment as a result of the February 1 Warning, the March 30 Suspension, and the July 6 Report. (Id. ¶ 86.) Aguilar subsequently prepared a draft termination notice, and sent it to Reyes for review on September 5, 2012. (Id. ¶ 91.) Adams does not specifically deny that the August 30 meeting took place (Pl.'s 56.1 Resp. ¶¶ 83, 85), that Aguilar and Reyes decided to terminate her employment on that date (Id. ¶ 86), or that Aguilar prepared a draft termination notice on September 5 (Id. ¶ 91). Instead, Adams questions why she was allowed to continue working after August 30 (Id. ¶ 86), and reiterates her allegation that it was Aguilar's "long nurtured goal" to terminate her (Id. ¶ 91).

On September 21, 2012, a patient submitted a complaint alleging that an NA named "Chi-Chi" had spilled urine on the patient's sheets (the "September 21 Complaint"). (Defs.' 56.1 Statement ¶ 93.) Aguilar initially suspected that Adams was responsible because her nickname was Chi-Chi, and prepared a revised draft of

4

the termination notice that included the September 21 Complaint. (Id. ¶ 96.) After further investigation, however, Aguilar determined that Adams had been mistakenly identified by the patient. (Id. ¶¶ 97-102.) As a result, Aguilar prepared a final draft of the termination notice and removed all references to the September 21 Complaint. (Id. ¶ 103.)

On the morning of November 1, 2012, Aguilar told Adams that she wanted to meet with her in the presence of a union delegate. (Id. ¶ 105; Adams Dep. Tr. at 210, ECF No. 40-1.) Accordingly, Adams arranged to meet with a union delegate at 1:00 p.m. the same day. (Id.) Shortly before 1:00 p.m., the union delegate informed Adams that Aguilar was unavailable to meet at the planned time. (Id. at 106; Adams Dep. Tr. at 211.) Adams then called Aguilar, and was told to return on November 5, 2012 with a union delegate. (Id. ¶ 107.) In response to this series of events, Adams decided to submit a "letter that [she] already wrote" (the "November 1 Letter") to Montefiore's Human Resources Department. (Id. ¶ 107; Adams Dep. Tr. at 213.) Adams concedes that she only submitted the November 1 Letter "after she was told to bring a union delegate and after she and Aguilar spoke on the phone." (Pl.'s 56.1 Resp. ¶ 108.)

On the morning of November 5, 2012, Adams met with Aguilar in the presence of a union delegate and a management witness. (Id. ¶ 109.) During that meeting, Adams was informed that her employment was being terminated, and she was given a written termination notice. (Id. ¶¶ 109-110.) The termination notice stated that Adams was being terminated based on "violation of Montefiore's medical

5

rules and regulations policy, unsatisfactory performance of work assignment, negligence or carelessness in performing work assignment, [and] inappropriate behavior toward or discourteous treatment of patients, colleagues, visitors, volunteers or any person." (Id. ¶ 110.) The termination notice also specifically referenced, inter alia, the June 16 Warning, the February 1 Warning, the March 30 Suspension, and the July 6 Report. (Id. ¶¶ 111-112.)

Central to plaintiff's complaint are two letters that were submitted to Montefiore in 2012:

- On April 16, 2012, Adams's husband wrote a letter to Montefiore's President, Dr. Steven Safyer (the "Landscaping Letter"). (Id. ¶ 119.) The letter alleged that Aguilar was harassing Adams because he refused to do landscaping for Aguilar in 2005. (Id. ¶¶ 120-121.)

- On November 1, 2012, Adams submitted a letter to Montefiore's Human Resources Department (the "November 1 Letter") after having been told to bring a union delegate to work. (Id. ¶ 124.) The letter alleged that Aguilar had "subjected [Adams] to unfair treatment and harassment, frequent write-ups without justification, physical assaults, threats of termination, set out to 'build a file' against her, encouraged other employees to write her up, and called her 'common.'" (Id. ¶ 125.) The November 1 Letter also attached a copy of the Landscaping Letter. Aguilar has testified that she did not know about the November 1 Letter until after Adams was terminated on November 5, 2012 (Defs.' 56.1 Statement ¶ 128), and Adams does not specifically

6

controvert that testimony (Pl.'s 56.1 Resp. ¶ 128 (denying paragraph 128 of Defs.' 56.1 Statement without citation or support)).

After she was terminated on November 5, 2012, Adams commenced the present action, alleging three distinct violations of 42 U.S.C. § 1981, the NYSHRL and the NYCHRL: (1) that she was subjected to a hostile work environment on the basis of her race and/or national origin; (2) that defendants retaliated against her by terminating her employment; and (3) that defendants retaliated against her by suspending her on November 1, 2012. (Compl. ¶¶ 56-73, ECF No. 1.) To substantiate her hostile work environment claims, Adams has alleged that over the course of her employment at Montefiore, Aguilar: (1) called her names; (2) pulled her hair; (3) insulted her appearance; (4) accused her of "messing around" with male colleagues; (5) prevented her from transferring to another floor; (6) made up stories about her; and (7) prevented her from attending LPN school. (Pl.'s 56.1 Resp. ¶ 114.)

II. LEGAL PRINCIPLES

　　a. Summary Judgment

Summary judgment may be granted when a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a motion for summary judgment, the Court construes all evidence in

the light most favorable to the nonmoving party, and draws all inferences and resolves all ambiguities in its favor. Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). The Court's role is to determine whether there are any triable issues of material fact, not to weigh the evidence or resolve any factual disputes. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

    b. Hostile Work Environment

        1. § 1981 and NYSHRL

To prevail on a race-based hostile work environment claim under federal and state law, Adams must show that: (1) "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" and (2) "a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)); see also Alvarado v. Nordstrom, Inc., 685 F. App'x 4, 6 (2d Cir. 2017) (citations omitted) (explaining that the same substantive standard applies to hostile work environment claims brought under Title VII, § 1981, and the NYSHRL). Further, Adams must show that the alleged harassment occurred because of her race and/or national origin. See Alfano, 294 F.3d at 374 (citing Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 440 (2d Cir. 1999), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at

work . . . through subjection to a hostile environment . . . is actionable . . . only when it occurs because of an employee's . . . protected characteristic.").

"The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Alfano, 294 F.3d at 373-74. "The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Perry, 115 F.3d at 149 (citation and quotation omitted). The misconduct shown must reach the level of an "objectively hostile or abusive work environment" and the victim must "subjectively perceive the environment to be abusive." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).

2. NYCHRL

Pursuant to amendments enacted by the New York City Council in the Local Civil Rights Restoration Act of 2005, and in order to effectuate the NYCHRL's "uniquely broad and remedial purposes," Kaur v. N.Y.C. Health & Hosps. Corp., 688 F. Supp. 2d 317, 339 (S.D.N.Y. 2010), "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (internal citations and quotations omitted).

In order to prevail on a hostile work environment claim under the NYCHRL, Adams must show that she was treated "less well than other employees" on the

basis of a protected characteristic. See Alvarado, 685 F. App'x at 8 (2d Cir. 2017) (quoting Mihalik, 714 F.3d at 110). Although there is "no doubt that the standard for proving a NYCHRL hostile work environment claim is lower than the standard for proving Section 1981 and NYSHRL hostile work environment claims," Alvarado, 685 F. App'x at 8, "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive," and that she is "treated less well . . . because of a discriminatory intent." Mihalik, 715 F.3d at 110 (internal quotations omitted).

    c. Retaliation

        1. § 1981 and NYSHRL

Race-based retaliation claims under 42 U.S.C. § 1981 and the NYSHRL are analyzed under the burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (explaining that retaliation claims under Title VII, Section 1981, and NYSHRL are all "analyzed pursuant to Title VII principles"). Under that framework, plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing: (1) "participation in a protected activity"; (2) "the defendant's knowledge of the protected activity"; (3) "an adverse employment action"; and (4) "a causal connection between the protected activity and the adverse employment action." Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotations omitted). This showing creates a "presumption of retaliation," which the defendant may rebut by "articulat[ing] a legitimate, non-retaliatory reason for the adverse employment action." Chen v. City Univ. of N.Y., 805 F.3d 59, 70 (2d Cir. 2015) (quoting Jute v.

10

Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)). If the defendant provides such an explanation, "the presumption of retaliation dissipates," id., and the plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2528 (2013). "'But-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Kwan, 737 F.3d at 845-46 (citing Nassar, 133 S.Ct. at 2526, 2533).

2. NYCHRL

As previously noted, employment discrimination claims under the NYCHRL are to "be evaluated separately from counterpart claims" brought under federal and state law. Kolenovic v. ABM Indus. Inc., 361 Fed. Appx. 246, 248 (2d Cir. 2010); see also Mihalik, 715 F.3d at 109. To "prevail on a retaliation claim under NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Wolf v. Time Warner, Inc., 548 Fed. Appx. 693, 696 (2d Cir. 2013) (quoting Mihalik, 715 F.3d at 112). Although the "but for" causation standard does not apply to retaliation claims under the NYCHRL, see Mihalik, 715 F.3d at 116, a plaintiff still must establish that "there was a causal connection between his protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for his termination was pretextual or 'motivated at least in part by an

11

impermissible motive.'" Weber v. City of New York, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013) (quoting Brightman v. Prison Health Serv., Inc., 970 N.Y.S.2d 789, 792 (2d Dep't 2013)).

III. DISCUSSION

For purposes of this decision, Adams's claims are separated into two groups: (1) the hostile work environment claims (Counts I-III); and (2) the retaliation claims (Counts IV-IX). Each group will be discussed in turn.

    a. The Hostile Work Environment Claims (Counts I-III)

        1. § 1981 and NYSHRL

Counts II and III of Adams's complaint allege that she was subjected to a hostile work environment on the basis of her race in violation of 42 U.S.C. § 1981 and the NYSHRL. To prevail on those claims, Adams must show that she was subject to "severe" and "pervasive" harassment because of her race and/or national origin. See Alfano, 294 F.3d at 373-374 (citations omitted); Brown, 257 F.3d at 252. Although Adams' experience at Montefiore may have been unpleasant, there is no evidence to suggest that she was harassed because of her race and/or national origin. Other than the boilerplate language of the claims themselves, nothing in plaintiff's submissions tends to show that she was harassed because of her race and/or national origin. In fact, Adams has conceded that Aguilar harassed her not because of race, but because Adams's husband refused to perform landscaping services for Aguilar in 2005. (Defs.' 56.1 Statement ¶ 118; Adams Dep. Tr. at 313-315, ECF No. 40-1.)

12

In short, Adams has failed to create a triable issue of material fact that any issues in her work environment occurred because of race and/or national-origin-based animus. On this record, no reasonable juror could find that Adams was subjected to a hostile work environment because of her race and/or national origin. Accordingly, Counts II and III of Adams's complaint must be DISMISSED.

   2. NYCHRL

Count I of Adams's complaint, which alleges that Adams was subjected to a hostile work environment in violation of the NYCHRL, fails for the same reason. Although the standard for proving a race-based hostile work environment claim under the NYCHRL is lower, Adams still needs to demonstrate that "the [allegedly harassing] conduct is caused by a <u>discriminatory</u> motive." See <u>Mihalik</u>, 715 F.3d at 110 (emphasis added).

Because Adams has failed to create a triable issue of material fact as to that required nexus, Count I of her complaint must be DISMISSED.

   a. <u>The Retaliation Claims (Counts IV-IX)</u>

      1. § 1981 and NYSHRL

Counts IV, VI, VII, and IX of Adams's complaint allege that she was suspended[2] and ultimately terminated in retaliation for raising complaints about racial discrimination in violation of 42 U.S.C. § 1981 and the NYSHRL. To prevail on those race-based retaliation claims, Adams must demonstrate, <u>inter alia</u>, that

---

[2] The parties dispute whether Adams was in fact suspended from work on November 1, 2012. The Court need not address that factual dispute because Adams has failed to create a triable issue regarding the underlying <u>basis</u> for any of defendants' actions.

13

she "participat[ed] in a protected activity," and that there was "a causal connection between the protected activity and the adverse employment action." Kwan, 737 F.3d at 844 (internal quotations omitted). Adams alleges that she was suspended and ultimately terminated as a result of two letters that were submitted to Montefiore: (1) the Landscaping Letter; and (2) the November 1 Letter. Plaintiff's claims do not survive summary judgment for at least three reasons.

First, it is clear that the Landscaping Letter cannot constitute protected activity. Adams did not write the Landscaping Letter, and cannot succeed in arguing that her husband's letter constitutes her own protected activity. In any event, the Landscaping Letter has no connection to race and/or national origin. It is solely concerned with an alleged personal service dispute. (Defs.' 56.1 Statement ¶ 119-121.) Accordingly, Adams has failed to make a prima facie case of race-based retaliation under McDonnell Douglas with regards to the Landscaping Letter.

Second, the Court concludes that Adams has failed to create a triable issue of fact as to the required "causal connection" between plaintiff's November 1 Letter and any adverse employment action. Adams has conceded that she was instructed to bring a union delegate to work on the morning of November 1, 2012 (Adams Dep. Tr. at 210), and that she only submitted the November 1 Letter to Montefiore after the meeting was canceled and rescheduled for November 5, 2012 (Pl.'s 56.1 Resp. ¶ 108). Even accepting as true that the November 1 Letter was drafted earlier, the undisputed facts demonstrate that Adams only submitted the letter in response to an already scheduled meeting and impending adverse employment decision. Under

14

the circumstances, without more, there is no basis to infer that the purport or agenda of the meeting was altered in any way <u>because of</u> the letter. Indeed, the uncontroverted facts demonstrate that defendants decided to terminate Adams on August 30, 2012, well <u>before</u> Adams submitted the November 1 Letter. (Defs.' 56.1 Statement ¶¶ 83, 85-86.)

Even assuming <u>arguendo</u> that the November 1 Letter constitutes "protected activity," it would be impossible for any juror to find that there was a "causal connection" between that letter and Adams's termination. Finally, the uncontroverted facts demonstrate that Aguilar was not aware of the November 1 Letter until <u>after</u> Adams was terminated on November 5, 2012. (Defs.' 56.1 Statement ¶ 127-28.) Accordingly, no reasonable juror could find that the November 1 Letter played any role in Aguilar's decision to take Adams off the payroll from November 1-2, 2012, regardless of whether that constitutes a "suspension". As such, Adams has failed to make a <u>prima facie</u> case of race-based retaliation under <u>McDonnell Douglas</u> with regards to the November 1 Letter.

Third, even assuming that Adams has succeeded made a <u>prima facie</u> case, she has failed to create a triable fact as to whether defendants' "desire to retaliate was the but-for cause of the challenged employment action." <u>See</u> <u>Nassar</u>, 133 S.Ct at 2528. Defendants have proffered a "legitimate, non-retaliatory reason for the adverse employment action[s]," namely, the June 16 Warning, the February 1 Warning, the March 30 Suspension, and the July 6 Report, none of which had anything to do with Adams's race and/or national origin. In fact, all four of those

15

events were explicitly referenced in the termination letter given to Adams on November 5, 2012. (Pl.'s 56.1 Resp. ¶ 111-12.) Adams has not produced any evidence tending to show that those reasons were pretextual, and has certainly not produced evidence tending to show that her race and/or national origin was nonetheless the "but-for cause" of her suspension or termination.

For the reasons described above, Counts IV, VI, VII, and IX of Adams's complaint must be DISMISSED.

2. NYCHRL

Counts V and VIII of Adams's complaint, which allege that she was suspended and ultimately terminated in retaliation for raising complaints about racial discrimination in violation of the NYCHRL, fail for substantially the same reasons. To prevail on a retaliation claim under the NYCHRL, Adams must show that "she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Wolf, 548 Fed. Appx. at 696 (quotation omitted). Further, Adams must show that there was a "causal connection" between the protected activity and the adverse employment action, and that the employer's proffered reason was "pretextual or 'motivated at least in part by an impermissible motive.'" Weber, 973 F. Supp. 2d at 273.

As discussed infra, Adams has failed to create a triable issue regarding the causal connection between the Landscaping Letter and any of defendants' adverse employment actions. Further, Adams has failed to create a triable issue regarding

16

the causal connection between the November 1 Letter and defendants' decision to suspend or terminate her employment.  Finally, Adams has failed to create a triable issue as to whether the defendants' proffered reasons for taking adverse employment actions (e.g., the June 16 Warning, the February 1 Warning, and the March 30 Suspension) were pretextual or partly motivated by racial discrimination.

Accordingly, Counts V and VIII of Adams's complaint must be DISMISSED.

IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment at ECF No. 37 is GRANTED in its entirety.

The Clerk of Court is directed to close any open motions and to terminate this action.

SO ORDERED.

Dated: New York, New York
October 3, 2017

_____
KATHERINE B. FORREST
United States District Judge